1825.
JUNE.

Allegre
vs
Insurance Comp'y

ALLEGRE *vs.* THE MARYLAND INSURANCE COMPANY.

APPEAL from *Baltimore* county court. Covenant on a policy of insurance. Plea, *Non infregit conventionem.* The facts are sufficiently stated in the opinion of this court. The cause was tried in the court below, before *Archer,* Ch. J. *and* Hanson *and* Ward, J. and came to this court on three bills of exceptions, taken to their opinions by the appellant, who was the plaintiff below.

The case was argued before BUCHANAN, Ch. J. MARTIN, STEPHEN, and DORSEY, J.

*Mayer,* J. Glenn *and* Taney, for the Appellant, contended, 1. That no preliminary proof of loss was necessary. 2 That parol evidence was inadmissible to prove what kind of preliminary proof had been usually required. 3. That no usage was admissible to show that the proof required was of a higher nature than would be necessary to sustain an action on the policy in a court of justice. 4. If preliminary proof was required at all, it had been waived by the appellees, or had been duly exhibited; and 5. That the court erred in refusing to permit the plaintiff, under the circumstances stated in the third exception, to produce evidence that such proof had been given

On the first point, they cited *Shep. Touch.* 380, tit. Obligation. 2 *Marsh. on Ins.* 617.

On the second and third points, *Noble vs. Kennoway, Doug.* 513. *Heaton vs. Rucker,* 3 *Burr.* 1707. *Park on Ins.* 470. *Phillips on Ins.* 17, 312, 313, (note.) *Bean vs. Stupart, Doug.* 12, (note 4.) *Mumford vs. Hallett,* 1 *Johns. Rep.* 433; & *Ogden vs. The Col. Ins. Co.* 10 *Johns. Rep.* 273.

On the fourth point, *Vos vs. Robinson,* 9 *Johns. Rep.* 192. 2 *Marsh.* 716, (note.) *Talcat vs. The Marine Insur-*

---

*Policies of insurance, charter parties, or, instruments of like nature, may be explained by parol evidence of the usages of the trade to which they relate, whether such usages regard the course of the voyage or not Parol evidence of usage admissible to prove the meaning of the words in a policy that in case of loss, the same was to be paid in ninety days after proof and adjustment thereof.*

*An action cannot be maintained on a policy containing the above clause, about proof and adjustment of loss, unless such proof is first exhibited to the underwriters.*

*The proof to be thus exhibited in the case of a partial loss, is the protest, bill of lading and invoice, or such equivalent proof as the nature of the loss admits of, that being the kind of proof usually required*

*Whether in the case of a partial loss on the cargo in a valued policy, the assured is to be indemnified according to the valuation in the policy, or to the actual value of the cargo at the port of shipment? If the cargo, however, be a mixed one, no adjustment can be made without proof of its value at the port of purchase.*

*If the underwriters in a policy having the clause relating to proof of loss and adjustment, before stated, inform the assured that they will not pay his loss, without saying that it is because of the want or deficiency of the preliminary proof, they will be held to waive the necessity for the proof.*

*If the underwriters refuse to pay the loss of the assured, his right of action immediately accrues, altho' there be a clause in the policy that payment is not to be made until ninety days after proof and adjustment of the loss, and that in case of dispute that the same be settled by arbitrators.*

*The agreement to arbitrate does not divest courts of justice of their jurisdiction.*

*The defendant's counsel prayed the opinion of the court, that the plaintiff was not entitled to recover unless he proved that he had exhibited to the defendants, before instituting his suit, as a part of his preliminary proof, his invoice, the usage of producing the invoice was not denied by the counsel for the plaintiff, the court gave the opinion, to which the plaintiff's counsel asked leave to except While drawing the exception, they were asked by the court if they intended to go on with the cause, or whether this opinion would end it; they replied that it would; when the court, with the consent of the counsel on both sides, discharged the witnesses. Before the jury retired, the plaintiff's counsel denied the usage of exhibiting the invoice, and refused to insert it in the exception; the counsel on the other side then called a witness, who had been discharged, by whom they proved the usage The plaintiff's counsel offered then to go on with the cause, and to prove that the invoice had been in fact exhibited; but the court refused to permit them, and compelled them either to be nonsuited, or to take a verdict for the defendants. Held that the court erred.*

ance Co. 2 Johns. Rep. 130. Haddow vs. Parry, 3 Taunt. 303; and M'Andrew vs Bell, 1 Esp. Rep. 373.

Lloyd, and Wirt, (Attorney General U. S.) for the Appellees. They referred, on the first point, to Lenox vs. The United Insurance Co. 3 Johns. Cas. 224. 1 Marsh. 138, 291. Park, 116. 2 Marsh. 631. Munson vs. The Marine Ins. Co. 4 Mass. Rep. 116.

On the second point, Johnson vs. The Col. Ins. Co. 7 Johns. Rep. 315. 1 Marsh. 226. 2 Marsh. 707, (note.) Ibid 672. Phill. on Ins. 499.

Dorsey, J. delivered the opinion of the court. The counsel on both sides, in the argument of this cause, have displayed great professional ability, and much labour of research; and the deep interest which the commercial part of our community take in subjects of this nature, have induced the court to give the matters in controversy their most serious consideration. In the progress of the trial in Baltimore county court, three bills of exceptions were taken by the counsel for the plaintiff, the first of which presented the following statement of facts on his part: "That on the 23d of May 1820, he obtained insurance on the cargo of the brig Eugene, from Rio de la Plata to Havanna, valued at $6000; the policy of which being for the most part in the usual form, contained the following clause: "And in case of loss, such loss to be paid in ninety days after proof and adjustment thereof, the amount of the note given for the premium, if unpaid, being first deducted; and it is mutually agreed, that if any dispute shall arise relating to a loss on this policy, it shall be referred to two persons, the one to be chosen by the assured, the other by The Maryland Insurance Company; which two persons shall have power to adjust the same; but in case they cannot agree, then those two persons shall choose a third, and any two of them agreeing, their determination shall be obligatory on both parties." That on the 8th of July following, the cargo, consisting of one hundred and six mules and four jack asses, was laden on board, the brig being then safe and staunch; and whilst on the voyage, by one of the perils insured against by the policy, all the mules, save twelve, were lost. That a protest was made in due form, sworn to by the captain and three of the crew, detailing

minutely all the particulars of the shipment of the cargo on board the brig, her sailing on the voyage, and the loss sustained as aforesaid. That this protest, together with the usual bill of lading, were delivered to the defendants by the plaintiff, as his preliminary proofs, before the bringing of this action. Sometime after the receipt whereof by the defendants, they caused the following letter to be written to the plaintiff:

"Mr. *J. B. Allegre*,

Sir—I am instructed by the directors of this company, to inform you, that the claim you make for the insurance on the cargo of the brig *Eugene*, has had their particular attention, and also that of Mr. *Pinkney* and Mr. *Purviance* the result of which is, that the company decline the payment, under a persuasion, sanctioned by those gentlemen, that the company are not answerable for the same.

Very respectfully, &c.

*John Hollins*, President."

That after this testimony had been given, the defendants offered to prove, that it was the "uniform and established usage for a vessel sailing from the port of shipment, to have on board a bill of lading, and invoice of cargo, showing its prime cost and value, and that such invoice is a document which the insurer is in the habit of demanding, and the assured of producing, on the settlement of all partial losses, although such losses may be claimed under a valued policy;" to the admission of which proof, the plaintiff's counsel objected; but the court overruled the objection, and permitted the testimony to be given; to which opinion the plaintiff excepted. In this case the plaintiff, having omitted to abandon, and claim for a total loss, brought the present action of covenant, to recover for a partial loss. Is there error in permitting this usage to be proved, to explain the meaning of the words "proof of loss and adjustment thereof?" is the question arising on this bill of exceptions. It has been conceded throughout the argument, that usages of trade are admissible in evidence to explain the meaning of expressions contained in policies of insurance, charter parties, or instruments of like nature. But it was contended that such proof could only be received of usages, which relate exclusively to the course of the voyage. In support of this assumed distinction, no decision has been adduced, not even an *obiter dictum*; nor has any reason been

submitted to show why the terms of a policy of insurance may not be as well explained by any other commercial usage as by usages of trade, applicable only to the course of the voyage. For solemn adjudications to the contrary, see the cases of *Cutter vs. Powell,* 6 *T. R.* 320. *Mason vs. Skurray,* 1 *Marsh. Ins.* 226; and *Gibson vs. Colt* and others, 7 *Johns. Rep.* 385. In none of which cases were the usages proved, as explanatory of the terms of the contract, usages of trade which related to the course of the voyage.

The *second* bill of exceptions contains the facts proved by the plaintiff, and the proof on the part of the defendants of the usage mentioned in the *first* bill of exceptions; which usage was proved by *David Winchester,* president of *The Baltimore Insurance Company,* and well acquainted with the mode of adjusting losses on policies of insurance. Whereupon the plaintiff, by his counsel, prayed the court to instruct the jury, that no proof is required on this trial that he exhibited to the defendants, before instituting this suit, any preliminary proofs, or that if such proofs be necessary, the protest and bill of lading are sufficient preliminary proofs, or that said letter from the defendants was a waiver of such proof. Which direction the court refused to give; and to such refusal the plaintiff excepted.

It is a rule of law, that in construing written instruments the court should give some meaning and operation to every clause and word of the instrument, provided it can be done consistently with the intentions of the parties. Let this rule be applied to the *first* branch of this exception, viz. Is it necessary, on a trial at law, on such a policy as the present, for the assured to prove that he exhibited any preliminary proofs to the insurer before he commenced his action for indemnity for a partial loss. It appears somewhat a matter of surprize, that the human mind could be prevailed upon to doubt on this subject. In support of the affirmative of this proposition, the language of the policy is so explicit, the intentions of the parties so obvious, that it almost becomes a self-evident proposition. By sanctioning the negative, you reject, as inoperative and superfluous, all that is said about "proof of loss," contrary to every known principle of construction.

The *second* branch of this exception, viz. "Was the exhibition to the insurer of the protest and bill of lading suf-

1825.

Allegre
vs
Insurance Comp'y

ficient preliminary proofs?" is a question, the answer to which is by no means so obvious. There is not that perspicuity and precision in the language used, which silence all doubt as to the meaning of the parties. The requisition of "proof of loss" is distinct and undeniable, but the obligation of the assured, to furnish the customary proofs of interest, and the quantum of loss, which form the basis of an adjustment, is certainly not so apparent. But when we advert to the nature and circumstances of the contract itself, the manifest design of the parties, in introducing this clause, that all adjustment of losses should be made by themselves, the sedulous precaution with which they have endeavoured to provide against all litigation, by declaring that if they cannot adjust the loss among themselves, that arbitrators shall be chosen for that purpose; that in no event, within the contemplation of the parties, was the assured to be authorised to sue at law. The court think that the true construction of this clause of the policy is, that the insured is bound to offer, as his preliminary proofs, such documentary proofs in his possession as are usually required in adjusting a partial loss; that is, the protest, bill of lading and invoice, or such equivalent proofs as the nature of the case is susceptible of. These proofs remain with the assured only, or his agents; the burthen of producing them therefore rests on him.

The court forbear to express any opinion on the question so warmly contested in the argument, "whether, in the case of a partial loss on the cargo in a valued policy, the assured is to be indemnified according to the valuation in the policy, or the actual value of the cargo at the port of shipment?" Let the question be settled as it may, if the cargo be a mixed one, proof of its actual value at the port of purchase must be produced, before an adjustment upon either principle can be made.

"Was the letter of the defendants to the plaintiff a waiver of such preliminary proofs?" is the last question arising on this exception; and the court are of opinion that it was. Good faith and fair dealing is of the very essence of all contracts of insurance, and should pervade every proceeding under them. If then the insurer, in writing this letter, intended to reject the claim of the insured, merely because the invoice had not been produced, the writing of this letter was a fraud upon the assured, a de-

ception utterly inconsistent with the spirit and meaning of
the contract; a species of conduct which this court will
never impute to the underwriters, while their acts are sus-
ceptible of a different interpretation. If they intended to,
refuse payment of the loss, because the invoice, a customary
part of the preliminary proofs, had not been laid before,
them, it was their duty so to have informed the insured;
and their failure to do so, and the writing of such a letter,
was a waiver of all further preliminary proofs. The letter
itself is a plain unequivocal notification to the plaintiff,
that his claim for indemnity will not be adjusted by the
defendants; and by necessary implication gives him to un-
derstand, that all further offers of preliminary proofs would
be useless.

1825.

Allegre
vs
Insurance Comp'y

The agreement to arbitrate does not oust courts of jus-
tice of their jurisdiction. The parties then stand in an
attitude not contemplated by them. Their stipulation, that
the loss is only to be paid in ninety days after proof of loss
and adjustment, looks only to the case of an amicable ad-
justment by themselves. When then by the acts of the de-
fendants that cannot be made, the plaintiff is absolved
from the operation of this stipulation, and his right of action
immediately accrues. His case comes completely within
the principle settled in the case of *Ogden vs. The Colum-
bia Insurance Company*, 10 *Johns. Rep.* 273, where, under
a proviso in the policy, that the assured should not abandon.
until six months after capture and detention, the condemna-
tion taking place in one month after capture, the court
determined, that the right to abandon was immediate upon
the condemnation, a new case having arisen not contem-
plated by the parties in their contract.

The *third* bill of exceptions presents a new point to the
consideration of the court, not at all involving any question
as to the merits of the matters in controversy between the
parties in the cause. The bill of exceptions states, that
after the plaintiff had given his evidence, as stated in the,
*first* bill of exceptions, and having declared his intention,
to relinquish the claim for a total loss, and to claim in this,
action for a partial loss, the defendants, by their counsel,
prayed the court to instruct the jury, that according to
the covenants contained in the policy, in order to maintain,
the present action, the plaintiff was bound to prove, that
previous to the institution of this suit, he had exhibited to

1825.

Allegre
vs
Insurance Comp'y

the defendants, among the preliminary proofs of loss, and for the purpose of adjustment, the invoice showing the prime cost of the cargo, for the loss of which he was now claiming; the defendants' counsel insisting in argument, that in a case like this, it was the constant usage of insurance companies, among such preliminary proofs, to require the production of such invoice, and of the insured to produce it, which usage was not denied by the plaintiff's counsel in argument, and by not being denied, was supposed by the court, and defendants' counsel, to be admitted; the court accordingly instructed the jury, that it was incumbent on the plaintiff to show, that among the preliminary proofs he had exhibited the said invoice of cargo, and unless he should prove this fact, he would not support the present action. To this instruction the plaintiff, by his counsel, declared that he would except, and proceeded to draw his bill of exceptions; while engaged in drawing it, the plaintiff's counsel were asked by the court, whether it was their intention to go on with the cause, or whether this instruction would put an end to it? To which the counsel answered, that it was not their intention to go on with the cause; whereupon the court, with the concurrence of the counsel on both sides, openly discharged the witnesses who were in attendance on the part of the defendants, and plaintiff also; the witnesses being discharged, and having left the court house, but the jury remaining undischarged in their box, the plaintiff's counsel denied the usage before stated, and refused to have it inserted in the bill of exceptions; whereupon the defendants' counsel, for the purpose of satisfying the plaintiff's counsel and the court, that it ought to be inserted in the bill of exceptions, sent for *David Winchester*, a resident of the city of *Baltimore*, and one of the witnesses who had been so as aforesaid discharged, but who had been previously summoned for the purpose of giving evidence in the cause, who did expressly prove the usage as above stated; after which the plaintiff's counsel offered to proceed with the cause, and to adduce evidence that the said invoice had been exhibited to the underwriters among the preliminary proofs, to wit, on the 23d day of May, in the year 1820; but the court, under the circumstances of the case, refused to permit the cause to proceed, and put it to the counsel for the plaintiff either to submit to a nonsuit, or to a verdict for the defendants; from which opinion of the court the plaintiff excepted.

Had the facts been inserted in this bill of exceptions, which actually occurred in the court below, as stated by the defendants' counsel in the argument of this case, the conduct of that court might have appeared free from all error or ground of exception. But this court must form their opinion upon the facts as stated in the record, and cannot look beyond it. In this case then, as thus presented to their consideration, the court think there is error in the proceedings of the court below. The discretionary powers of courts of law are confined within fixed and well established limits, and are to be exercised to further, not prevent, the administration of public justice. The county court had not a right of their own mere motion, (and no other motive for their conduct here appears,) to refuse permission to the plaintiff to proceed in the trial of his cause; the right to such objection belonging to the defendants, and not the court. In the exercise of this right, the defendants must state the grounds of their objection; of the sufficiency of which the court are to judge. If they had alleged the absence of their witnesses, occasioned by the proceedings, which had taken place, they must have stated what they expected to prove by them, that the plaintiff, if he sees fit, may admit the facts, and proceed with the trial; and should he refuse to make the admission, it would then become the duty of the court to put him to his election, either to consent to withdraw a juror, take a verdict against him, or nonsuit his case.

The court concur with the opinion of the county court on the *first* bill of exceptions, and on the two first divisions of the *second* bill of exceptions, but they dissent from their opinion on the last alternative of the *second* bill of exceptions, and from the opinion given on the *third* exceptions.

Let the judgment therefore be reversed, and a *procedendo* awarded.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.